39 F.Supp. 91 (1941)
UNITED STATES
v.
CERTAIN LANDS IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, STATE OF NEW YORK, FOR THE ESTABLISHMENT OF RECEIVING BARRACKS et al.
No. M-476.
District Court, E. D. New York.
May 15, 1941.
*92 Nathan L. Goldstein & Bro., of New York City (Abe Wagman, of New York City, of counsel), for Regis Holding Corporation.
Harry T. Dolan, Sp. Asst. to U. S. Atty. Gen. (Edward H. Murphy, of New York City, Sp. Atty., Department of Justice, of counsel), for petitioner-plaintiff.
MOSCOWITZ, District Judge.
This is a motion made by Regis Holding Corporation for the payment of $12,000 deposited by the United States of America for Damage Parcel No. 19 in the above proceeding.
The Government does not oppose the motion in its entirety, it claims that "a sufficient sum" of money should remain on deposit with the Registry of the Court as security to cover contingencies.
The proceeding herein is for the condemnation of certain properties including property owned by the Regis Holding Corporation, which proceeding is based upon Title 40 United States Code Annotated, Sections 257, 258 and 258a.
Section 257 provides that where a proper officer of the Government deems it necessary and advantageous to the Government that certain property be condemned, he shall have the authority to institute condemnation proceedings through the Attorney General of the United States, in the United States district court of the district in which the property is located.
Sections 258 and 258a govern the nature of the practice and procedure. Section 258 provides as follows: "The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in courts of record of the State within which such district court is held, any rule of the court to the contrary notwithstanding."
In an instance where there is a procedural question which is not expressly covered by the United States Statutes or the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or otherwise covered by the Civil Rules of this district, Rule 45 of the Civil Rules would apply to such procedural question. Rule 45 is as follows: "Whenever a procedural question arises which is not covered by the provisions of any statute of the United States, or of the Federal Rules of Civil Procedure, or of these rules, it shall be determined, if possible, by the parallels or analogies furnished by such statutes and rules. If however, no such parallels or analogies exist, then the procedure heretofore prevailing in courts of equity of the United States, or in default thereof the procedure which shall then prevail in the Supreme Court of the State of New York shall be applied."
In view of the fact that the new Federal Rules of Civil Procedure do not apply to condemnation proceedings (See Rule 81(a) (7) which reads as follows "In proceedings for condemnation of property under the power of eminent domain, these rules govern appeals but are not otherwise applicable.") and that there is no Federal condemnation procedure, the law of the State where the property is situated, as near as may be, governs the practice, pleadings, forms and proceedings, therefore the New York State Condemnation Law, McKinney's Consolidated Laws, c. 73, Volume 9A, relating to practice, pleadings, forms and proceedings is to be followed in all proceedings to condemn lands in New York State, subject to the express provisions of Sections 257, 258 and 258a of Title 40 of the United States Code Annotated. Any provision of the New York State Condemnation Law relating to any subject other than practice, pleadings, forms and proceedings is therefore not applicable in a Federal condemnation proceeding. Under the New York law there is no provision for the taking of title prior to the termination of the condemnation proceeding.
Under Section 258a the Government acquired title to the property immediately after filing its petition in condemnation and is not required to wait until the final judgment.
Section 258a provides that in a condemnation proceeding of this character the Government may file with the petition or any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the land described in the petition, declaring that said land is to be taken for the use of the United States. The declaration must contain a statement of the sum of money estimated to be just compensation for the land taken. Upon such filing and the deposit in court, to the use of the *93 persons entitled thereto, of the estimated just compensation, the land is condemned and title vests in the Government. The court is thereupon empowered in its discretion to order the deposit or any part thereof to be paid for on account of the just compensation to the persons entitled thereto.
Section 258a provides that the Government is required to pay just compensation for the land and as part of the just compensation awarded, interest at the rate of 6% per annum on the amount finally awarded as the value of the property as of the date of taking, from that date to the date of payment, but interest shall not be allowed on so much thereof as shall have been paid into court, the deposit stands in place of the land taken.
Prior to the enactment of Section 258a the bill, which was subsequently enacted as Section 258a, was discussed in the House of Representatives on December 5, 1930, as appears from the appended excerpt from the Congressional Record, Volume 74, page 777.[1]
*94 A reading of these discussions clearly indicates that it was the intention of the Congress that the money deposited by the Government be paid immediately to those persons who are entitled to receive it.
Section 258a, as has been stated, provides for interest only on the excess over the amount deposited. The Congress could not deprive an owner of its property without just compensation. It was the intention of the Congress to provide that the *95 amount deposited should be immediately paid in full to the persons entitled to receive the same, otherwise it would violate the Fifth Amendment to the Constitution of the United States. See Hessel v. A. Smith & Co., D.C., 15 F.Supp. 953; United States v. Eighty Acres of Land, D.C., 26 F.Supp. 315.
*96 In this proceeding the Government acquired title to the premises by the filing of a declaration of taking on the 24th of January, 1941, and a judgment thereon was entered on January 25, 1941. At the time of filing the declaration of taking a *97 notice and petition in condemnation was filed, and attached to said petition is a notice which recites that the persons to whom it was directed may appear on or *98 before June 8, 1941, and interpose an answer to the petition.
The Regis Holding Corporation, the movant, is not required to wait until *99 June 8, 1941, to receive the deposit made by the Government  as a matter of fact it may be many months beyond that, as the proceeding is likely to be protracted. Regis Holding Corporation became the owner of the premises pursuant to a deed dated July 1, 1939, and duly recorded in the office of the Register of the County of Kings on November 16, 1939, in Liber 5789 of Conveyances, at page 396. It and its immediate grantors have been in peaceable, continuous and undisturbed possession of the property for over twenty years prior to the time title vested in the United States of America. Its title has never been disputed, questioned or rejected nor has it sold, assigned, conveyed or contracted to sell, assign or convey, or in any way transfer the premises or the money deposited therefor. The premises are free and clear of all mortgages, leases or other encumbrances, except real estate taxes due the City of New York. There is therefore no reason to wait until after the return day of the petition in condemnation for the payment of the deposit. Many months may elapse before the proceedings are terminated. If the Government's position is correct the owner of the property in the meantime can be deprived of its property or the deposit. This was not the intention of the Congress.
Section 258a expressly provides that the Court upon application of the parties in interest, may order that the money deposited in court or any part thereof be paid forthwith for or on account of the just compensation to be awarded in the proceeding.
If it should appear in a condemnation proceeding that the applicant is not entitled to the entire deposit, the court may nevertheless award him the part to which he is entitled (See Memorandum of Judge Byers, dated March 31, 1941, in United States of America v. Certain Lands Located in the Borough of Brooklyn, County of Kings, State of New York, for the establishment of Receiving Barracks and Allrich Luhrs et al., Damage Parcel No. 13[2], and Memorandum of Judge Byers, dated April 12, 1941, in United States of America v. Certain Lands Located in the Borough of Brooklyn, County of Kings, State of New York, for the establishment of Receiving Barracks and Allrich Luhrs et al., Damage Parcel No. 31,[2] or the court could withhold a certain portion of the deposit pending the disposition of liens and encumbrances, or withhold the deposit or any part thereof pending clearance of the title of the person applying for the payment of the deposit. It appearing that the applicant is the owner of the property no good reason exists for withholding the deposit and it should be paid to it at once.
It appears from the affidavit of the attorney for the Government that the premises were occupied by the Shawmut Transportation Company, Inc., under a landlord and tenant relationship.
The attorney for the Regis Holding Corporation has made an affidavit in reply in which he states that the tenant was in possession of the property under a month to month lease and has no claim whatever against Regis Holding Corporation nor has it any interest in the award to be made for the land and building. He further states in his affidavit that the moving party will either produce a release of claim by this tenant, or else join the tenant in the motion, if the court so directs.
The claim of a tenant in a condemnation proceeding is for the market value of the unexpired term of the lease. A month to month tenant such as Shawmut Transportation Company would have no such unexpired term and therefore would not be entitled to any award. In view of the fact that the attorney for the moving party is willing to produce a release of claim by the tenant or else join the tenant in the motion, the entry of the order will, in the meantime, be withheld.
NOTES
[1] "Construction of Public Buildings Outside District of Columbia

"The next business on the Consent Calendar was the bill (H.R. 14255) to expedite the construction of public buildings and works outside of the District of Columbia by enabling possession and title of sites to be taken in advance of final judgment in proceedings for the acquisition thereof under the power of eminent domain.
"The Clerk read the title of the bill.
"The Speaker. Is there objection to the present consideration of the bill?
"Mr. Stafford. Mr. Speaker, I reserve the right to object. I would like to have the chairman of the Committee on the Judiciary express his opinion as to whether this bill should not, in its broad powers, be restricted to the Treasury Department. Its purpose is to advance the construction of public buildings, and those buildings are exclusively under the jurisdiction of the Treasury Department. Under the authority here conferred, you would extend that to any bureau or other instrumentality of the Government.
"Mr. Graham. Mr. Speaker, this bill is a bill that was prepared in the Department of Justice by the Attorney General. It is exactly similar to the one which we passed at the end of 1929 for the District of Columbia, and the purpose of the bill is simply to remove some of the obstructions in the way of condemnation proceedings by the Government, allowing the Government to take title at once, paying the money into court, reserving the right for full compensation to the party aggrieved.
"Mr. Stafford. If the gentleman will permit, I think he is not accurate when he says that it is an exact duplicate of the District bill.
"Mr. Graham. I did not say that.
"Mr. Stafford. Which we passed in the last Congress, providing for the taking of lands in the District of Columbia. In the District of Columbia we have other agencies besides the one department for the taking over of lands. The purpose of this bill is to expedite the taking of property so that the Government may go ahead and begin building operations. The bill the gentleman refers to, passed in the last Congress, is a much broader bill. The only part of the bill incorporated here is section 10 of that law, and there is not only that difference, but I invite attention to whether we should not limit this exclusively to the Treasury Department.
"Mr. Cramton. Mr. Speaker, will the gentleman yield?
"Mr. Stafford. Yes.
"Mr. Cramton. The general statute that provides for the condemnation of lands needed for Federal use is not limited to the Treasury Department. That statute reads that any official of the Government may avail himself 
"Mr. Stafford. Of the instrumentality of the States.
"Mr. Cramton. He may avail himself of condemnation proceedings.
"Mr. Stafford. As provided by State law.
"Mr. Cramton. Oh, no; I am not speaking about that.
"Mr. Stafford. I am.
"Mr. Cramton. I am emphasizing that other departments than the Treasury Department have the authority now to initiate condemnation proceedings, and, of course, the Department of Justice carries on the suit, and hence they ask this change in procedure. This is changing the procedure; it is not making any change in the authority to construct buildings.
"Mr. Stafford. I take issue with the gentleman there. I would like first to have settled this question that I have difficulty in bringing myself to agree with. In section 3 the language provides that action under this statute  irrevocably committing the United States to the payment of the ultimate award  shall not be taken unless the chief of the executive department or agency or bureau of the Government empowered to acquire land shall be of opinion, and so forth. We are vesting very broad authority under this bill in certain departments, and also bureaus and agencies of the Government. I recognize the need of providing methods to expedite the Government taking possession of the property to advance Government construction work, but whether we should go to the extent of conferring on the head of a bureau or other agency this power, I have serious doubt.
"Mr. Graham. If the learned gentleman will re-read the bill, he will understand that the bill does not confer any jurisdiction upon departments to do this, that, or the other. It is simply taking up a general procedure in condemnation and altering that procedure in one particular, to wit, so that the Government will not be obstructed and hindered by unnecessary motions and appeals, but may pay the money into the court where the proceeding is pending, and let that money stand for the result of the condemnation procedure. If the gentleman will notice, the bill simply recites that in any proceeding in any court in the United States outside of the District of Columbia, and so forth.
"That is all that is intended. It is the power to do this one single act in the course of the procedure in condemnation, to pay the money into court, and to transfer recovery in a suit for damages to the money, giving title to the Government at once.
"Mr. Stafford. I direct the attention of the learned chairman of the Committee on the Judiciary to the language of the first line of page 2:
"A declaration of taking signed by the authority empowered by law to acquire the lands described in the petition.
"Mr. Graham. Yes; it does not confer any new power to take or do anything.
"Mr. Stafford. Who is that authority? It says, `Signed by the authority,' not by an officer of the Government empowered by law. Who is the authority?
"Mr. Graham. I do not know. In the case of the Veterans' Bureau it might be through General Hines, and in the Treasury it might be through Mr. Mellon, and in a dozen other ways it might be done, but we do not change the law with respect to who shall begin any procedure of condemnation. We simply provide that whenever a procedure of that kind has been begun, we, instead of permitting dilatory motions to prevent the vesting of title and the commencement of building operations, provide that the United States may pay the money into court, and the money is substituted in the litigation.
"Mr. Chindblom. Will the gentleman yield?
"Mr. Stafford. Yes.
"Mr. Chindblom. I think this legislation has two elements of virtue. First, it is going to expedite enormously the present proceedings for construction by the Federal Government. Secondly, very often owners of property find themselves in the position of having been compelled to protect and defend themselves against condemnation proceedings, and then, for some reason, the Government authority  I do not mean merely the Federal Government, but some department  decide that the price is too high and change their minds, and the owners have been put to the expense and annoyance of defending their rights. I think it well, right in the beginning of the proceeding, when the Federal Government attempts to acquire property and take it away from an owner for Federal purposes, to tighten up the matter so that there can be no change in the purpose and no question whatever about the ultimate acquisition of the property.
"Mr. Stafford. The gentleman means so that they can not change their minds overnight.
"Mr. Chindblom. Yes.
"Mr. LaGuardia. Will the gentleman yield?
"Mr. Stafford. I yield.
"Mr. LaGuardia. I think section 3, which the gentleman has some misgiving about, is for the very purpose of preventing abuses and undue expenditures which the gentleman seeks to avoid. It states that before you can avail yourselves of the benefit of this law, a responsible head must certify that the land in question will not cost, even in condemnation, beyond the amount authorized by Congress.
"Mr. Stafford. The very purpose of my inquiry was to confine the authority to some responsible head, and not to some mere agency or bureau, because this is a great power that is to be exercised under the provisions of this bill.
"Mr. LaGuardia. The reason is that instead of having a pro forma certification by the head of a department in Washington, it places that responsibility on one who knows value or one who is in a position to certify truthfully to the value.
"Mr. Stafford. Oh, it might be some superintendent of an Indian agency out in the field. It just says `agency.'
"Mr. LaGuardia. I think the gentleman is too apprehensive about that.
"Mr. Collins. Will the gentleman yield?
"Mr. Stafford. I yield.
"Mr. Collins. I would like to ask the gentleman a question. Of course we are all in sympathy with the purpose of this legislation, but does not the Government by this bill invade the power of the States by providing a different method of procedure in the State courts from the methods that are provided by the States themselves, and will not the enactment of the legislation accomplish a different purpose than the purpose attempted? To illustrate: The States have the right to provide rules of procedure in their courts. The Federal Government under this legislation attempts to provide rules of procedure in the State courts, and I am fearful we are going farther than we have a right to go. What is the opinion of the gentleman on this?
"Mr. Graham. May I suggest to the gentleman that this does not change the procedure so far as the jurisdiction or right to take over in condemnation proceedings is concerned. Wherever the United States rightfully and properly is taking condemnation proceedings under Federal statutes, then there is inserted this provision, that in such case the Government may take title at once by paying the money into court.
"Mr. Chindblom. Not take title, but take possession?
"Mr. Graham. No; it takes title. Power is given to get an additional verdict if the deposit should be inadequate.
"Mr. Stafford. Will the gentleman yield?
"Mr. Graham. I yield.
"Mr. Stafford. As I understand this bill it is a measure providing procedure, to advance the regular work of condemnation after a condemnation suit has been instituted.
"Mr. Graham. That is all it does.
"Mr. LaGuardia. And deposit the money in court.
"Mr. Graham. Yes, sir.
"Mr. Stafford. Mr. Speaker, I withdraw my reservation of objection.
"The Speaker. Is there objection?
"There was no objection.
"The Clerk read the bill, as follows:
"Be it enacted, etc., That in any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto
"(1) A statement of the authority under which and the public use for which said lands are taken.
"(2) A description of the lands taken sufficient for the identification thereof.
"(3) A statement of the estate or interest in said lands taken for said public use.
"(4) A plan showing the lands taken.
"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the lands taken.
"Upon the filing of said declaration of taking and of the deposit in the registry of the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the person entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per cent per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the registry. No sum so paid into the registry shall be charged with commissions or poundage.
"Upon the application of the parties in interest, the court may order that the money deposited in the registry of the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.
"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable.
"Sec. 2. No appeal in any such cause nor any bond or undertaking given therein shall operate to prevent or delay the vesting of title to such lands in the United States.
"Sec. 3. Action under this statute irrevocably committing the United States to the payment of the ultimate award shall not be taken unless the chief of the executive department or agency or bureau of the Government empowered to acquire the land shall be of the opinion that the ultimate award probably will be within any limits prescribed by Congress on the price to be paid.
"Sec. 4. The right to take possession and title in advance of final judgment in condemnation proceedings as provided by this act shall be in addition to any right, power, or authority conferred by the laws of the United States or those of any State or Territory under which such proceedings may be conducted, and shall not be construed as abrogating, limiting, or modifying any such right, power, or authority.
"Sec. 5. In any case in which the United States has taken or may take possession of any real property during the course of condemnation proceedings and in advance of final judgment therein and the United States has become irrevocably committed to pay the amount ultimately to be awarded as compensation, it shall be lawful to expend moneys duly appropriated for that purpose in demolishing existing structures on said land and in erecting public buildings or public works thereon, notwithstanding the provisions of section 355 of the Revised Statutes of the United States; Provided, That in the opinion of the Attorney General, the title has been vested in the United States or all persons having an interest therein have been made parties to such proceeding and will be bound by the final judgment therein.
"With the following committee amendments:
"On page 2, line 17, strike out `registry of the.'
"Page 3, line 8, strike out the word `registry' and insert the word `court.'
"Page 3, line 11, strike out the words `registry of the.'
"The committee amendments were agreed to.
"Mr. LaGuardia. Mr. Speaker, I move to strike out the last word.
"Many members of the committee were not unmindful of the fact that this bill is purely to meet the emergency condition which exists, and to avoid delay in the actual commencement of the building of structures heretofore authorized. I am sure we will all watch how this will work out; and if it is found that there are grave abuses in the awards, or that it does not work to the satisfaction of the Government, then, of, course, it can always be amended or repealed, as the case might require. In all likelihood it will work out well, but I am sure it was the great emergency which prompted the committee to report the bill out at this time.
"Mr. Douglas of Arizona. Will the gentleman yield?
"Mr. LaGuardia. I yield.
"Mr. Douglas of Arizona. Might it not be wise to place some time limitation?
"Mr. LaGuardia. Well, we thought about that; but after consideration we think it best to let it go this way, so that the Government will have everything necessary and can go in without any delay and acquire possession and go ahead with the building.
"Mr. Graham. I would like to say to the gentleman that in my opinion this is not strictly an emergency measure. While it is called forth by conditions which exist now, it is a permanent feature of the law. This same procedure exists in many of our States and has operated well. The constitutionality of the procedure, as I have stated in the report, has been passed upon and approved, so that the only question is that this shall be done in condemnations which are meant solely to be the taking by a power that has the right to take a piece of property for a public use, and the only thing that an owner has is the right to just compensation. That is preserved in this bill to the fullest extent, and the power of the Government not to wait for dilatory pleas or motions but to take advantage of this privilege of paying the money into court is the only additional thing. I can not see how under any circumstances it can ever work any hardship or injury.
"Mr. Greenwood. Who fixes the amount that is paid into court in the first instance? Upon what basis is that fixed.
"Mr. Graham. That is set out in the bill.
"Mr. Greenwood. Can the gentleman give me the information? I did not understand it.
"Mr. Graham. It is appraised by competent authorities, and the provision is in the bill that if that is inadequate and the jury should find more, the Government can not shirk its responsibility to pay full compensation.
"Mr. Greenwood. Then there is no way for the Government to refuse to take it? If the court decides they should pay more, they must pay more and take it?
"Mr. Graham. Yes.
"Mr. Dyer. There was a case recently in the District of Columbia where the amount was fixed upon, and afterwards the commissioners had to come to the House and ask for more money because the property owners had taken the matter to the courts, and the court had allowed through a jury a different amount than the amount at which the commissioners had appraised the property.
"Mr. Stafford. Will the gentleman acquaint the committee with the fact of whether in the purchase of these Government lands there is any negotiation on the part of Government representatives to try to secure the land at a low price? This bill will virtually result in leaving the Government at the mercy of a condemnation jury.
"Mr. Graham. This bill only operates after preliminary negotiations and attempts to purchase have been exhausted. Then when it comes back to the resort of the Government, the Government steps in and by its power of eminent domain takes, and when it takes, the bill simply provides that it shall not be hindered and obstructed by dilatory motions. The money may be paid into court and possession had at once.
"Mr. O'Connor of New York. For years in New York we have had a provision similar to this, where by resolution title would vest in the Government. In that case, however, the property owner gets interest at the usual rate from the date of vesting. Is that true in this bill?
"Mr. Graham. Certainly; because the verdict is a verdict plus interest.
"Mr. O'Connor of New York. From the date of vesting? If that is not specifically provided there will be some question about it on the ground that the owner is put out of possession of his property. The Government is entitled to go in and he has no right to the property, and unless he does get interest from the date of the vesting of title his full rights are not protected.
"Mr. Graham. My friend from Wisconsin (Mr. Stafford) calls my attention to these lines in the bill:
"And the said judgment shall include as part of the just compensation awarded interest at the rate of 6 per cent per annum on the amount finally awarded as the value of the property as of the date of taking.
"Mr. Chindblom. Read the balance.
"Mr. Graham (reading):
"From said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.
"Mr. O'Connor of New York. That, of course, is not fair to the man. He is deprived of his property and has not the use of the money deposited in court.
"Mr. Dyer. The bill also provides that the money paid into court may be paid to the owners immediately.
"Mr. O'Connor of New York. The full amount?
"Mr. Dyer. The full amount they have agreed upon, and they get the additional amount allowed, if any, with interest from the date of vesting.
"Mr. O'Connor of New York. Let me cite this instance. The Government might condemn property worth a half million dollars; that might be the ultimate award, but the Government might only pay into court $100,000 and the man whose property has been condemned can by application go into court and get the $100,000, but later the court determines the property to be worth a half million dollars and he does not get interest on the $400,000 from the time of the vesting of title.
"Mr. Dyer. Yes; that is what he does get. He would not get interest on the $100,000, because he can go in and take it, and if he does so he does not get interest.
"Mr. Chindblom. If the gentleman will permit, a little while ago there was some discussion as to whether upon the depositing of the money the title actually vested. I had not then observed the language on page 2, line 16.
"The Speaker. The time of the gentleman from New York has expired.
"Mr. Chindblom. Mr. Speaker, I ask unanimous consent that the gentleman from New York may have five minutes longer on the pro forma amendment.
"The Speaker. Without objection, it is so ordered.
"There was no objection.
"Mr. Chindblom. I had not then observed the language on page 2, line 16, reading as follows:
"Upon the filing of said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation, stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto.
"Under that language, no doubt, the owner could go in immediately and receive from the court the money which had been deposited for his use.
"Mr. Graham. That was the idea.
"Mr. Chindblom. That is the purpose of the committee, is it not?
"Mr. Graham. Yes.
"Mr. Jenkins. Would that prevent the owner from going ahead with the prosecution of his rights?
"Mr. Graham. Not at all.
"Mr. O'Connor of New York. Is is optional with the governmental agencies as to whether or not they shall vest title immediately under this bill or let it proceed as is now done under general condemnation?
"Mr. Graham. The gentleman from Illinois (Mr. Chindblom) has recited the act. The title vests at once.
"Mr. O'Connor of New York. In every instance of condemnation?
"Mr. Graham. No, no; I did not say that. Wherever this right to pay money into court is exercised the title vests in the Government and the man who owns the property gets that in addition to the money, and the Government of the United States may take over whatever estate they are trying to take over, in fee simple absolute, or such less estate or interest therein as is specified in the declaration.
"Mr. O'Connor of New York. I am not sure the gentleman has answered my question. The Government determines to condemn a certain piece of property outside of the District of Columbia. Will that in every instance vest the title by depositing the funds or do they have the option of letting it go under ordinary condemnation as now? Do they have both options?
"Mr. Graham. It is very clear that the Government has the option on filing its petition to pay into court.
"Mr. Dyer. Under the present law we can not proceed to take over the property and start public works until the Attorney General has certified that the Government has the title to the property and we can not do that as long as proceedings are pending on appeal in connection with these matters. So this is simply to change that and say it shall take the title over at once.
"Mr. O'Connor of New York. It could take the title?
"Mr. Dyer. Yes.
"Mr. Chindblom. The bill says that in any condemnation proceedings filed by the Government the petitioner, being the governmental authority
"May file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States.
"And thereupon the money shall be deposited and the right to the money so deposited will accrue to the owner.
"Mr. Dyer. And title vests.
"Mr. Greenwood. I would like to ask whether the Government has the same right of appeal as the property owner has after the money has been paid in? Suppose the Government authorities are not satisfied with the award, can they pay in the money and take an appeal also?
"Mr. Graham. The same as the existing practice; yes.
"Mr. Dyer. Whatever the present law is pertaining to condemnation.
"Mr. Graham. That is not changed at all.
"The pro forma amendment was withdrawn.
"The bill was ordered to be engrossed and read a third time, was read the third time, and passed.
"A motion to reconsider was laid on the table."
[2] No opinion for publication.