UNITED STATES v. 17,280 ACRES OF LAND, MORE OR LESS, SITUATED IN SAUNDERS COUNTY, NEB., et al.

Civ. No. 138.

District Court, D. Nebraska, Lincoln Division.

Oct. 30, 1942.

William Lemke, of Fargo, N. D., and M. O. Cunnningham, of Omaha, Neb., for moving respondents, Mary T. Charling and others.

Joseph T. Votava, of Omaha, Neb., and A. Z. Donato, of Wahoo, Neb., for petitioner.

DELEHANT, District Judge.

The issues here considered arise in an action by which the United States of America, under the authority of Title 40, U.S.C.A. §§ 257, 258, 258a, has acquired the title to, and possession of, nearly eighteen thousand acres of land in Saunders County, Nebraska, as the site of an army ordnance plant. Late in 1941 sundry petitions for condemnation and declarations of taking were filed and deposits made of the estimated just compensation for the lands taken (40 U.S.C.A. § 258a). Orders awarding possession of the condemned land to the United States were seasonably entered and possession even of the most recently acquired land has been enjoyed for approximately nine months, and of some of the property for a still longer period.

Several of the owners of the separate tracts have accepted the estimated just compensation as full payment for their respective parcels of property and, by stipulations and orders of the court, have received the entire amounts deposited on account of their respective tracts in satisfaction of their claims. Except in cases where dispute or uncertainty respecting title has intervened, owners not accepting the estimated compensation, including all presently moving respondents, have, by separate stipulations and orders of court, received eighty per cent of the estimated and deposited compensation, or seventy-five per cent thereof in instances where claims of tenants in possession are unadjusted. The undistributed twenty (in some instances twenty-five) per cent of the deposited sum remains in the registry of the court.

Appraisers have not yet been appointed by this court to make the initial judicial appraisal contemplated by the statutes of Nebraska, to which recourse must be had for the greater part of the procedure to be pursued in this court (40 U.S.C.A. § 258; Rule 81(a) (7), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c). Nor has the petitioner, by any pleading or motion, sought such appointment (vide infra).

The action is presently before the court upon the joint motion of the owners of twenty-eight separate tracts in the condemned area in which they demand, (a) the immediate payment to each of them of the reserved portion of the estimated and deposited compensation for the taking of this or her real property, and (b) the immediate appointment of appraisers, as contemplated by the law of Nebraska, in the judicial taking of private property for public use. The petitioner resists the motion in its entirety. The motion's prayers will be considered separately.

Upon the demand of the moving respondents for the immediate distribution of the reserved portion of the deposited funds, the court is persuaded that their general position is well taken. This conclusion has been reached with acknowledged hesitation, founded, perhaps, on the program in condemnation cases under the laws of Nebraska. Those laws clearly contemplate that in the Nebraska practice a defendant electing to contest the issue of the value of the condemned property after the deposit of the amount of his initially determined damages must anticipate both a resultant delay in his receipt of the moneys deposited by the condemning petitioner and the hazard of failure to receive more than the first appraisal with the consequent taxation of costs and denial of interest. See Sections 74-307, 26-711, and 83-1603, C.S.Neb.1929. But two considerations claim attention upon this point. In the first place, it is only the procedural machinery of the local jurisprudence that is utilized in actions of this character. Title 40 U.S.C.A. § 258. Provisions of the statutes of Nebraska relating to any aspect of the law of Eminent Domain other than "practice, pleadings, forms and modes of proceedings" are inapplicable here. The elemental legal rights and equities as between the condemning petitioner and the respondent owners are governed by the laws of the United States. United States v. Certain Lands in Borough of Brooklyn, D.C., 39 F.Supp. 91. Then, the taking of the respondents' lands and the deposit of the petitioner's voluntary estimate of the just compensation therefor have occurred in this instance at the very inception of the suit, and under the terms of Title 40 U.S.C.A. § 258a. No precisely comparable situation is contemplated by the laws of Nebraska, under which the option of the petitioner to pay into court a tentatively determined measure of damages, and thereupon to enter into possession of the condemned property, arises only upon the making of the first appraisal by a board of judicially appointed appraisers. And that in any event is appreciably later than, and in this instance will be many months after, the commencement of the suit.

Title 40 U.S.C.A. § 258a, enacted in 1931, is not a complete condemnation statute. It merely supplements theretofore existing legislation by allowing to the United States as a condemning petitioner a newly devised option to secure the immediate title to and possession of lands upon the deposit in the court of a sum of money estimated by the petitioner to be the just compensation for the lands taken. It was prompted by the necessity for punctuality in the initiation of public works in relief of the economic depression during which it was passed; but it is of even greater and more obvious utility to the federal government in the current international crisis. It is so largely material to the present motion that it is quoted in its entirety:

"In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

"(1) A statement of the authority under which and the public use for which said lands are taken.

"(2) A description of the lands taken sufficient for the identification thereof.

"(3) A statement of the estate or interest in said lands taken for said public use.

"(4) A plan showing the lands taken.

"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.

"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

Upon the oral argument of this motion the government emphasized the permissive character of the authority of the court to direct the disbursement of the money deposited in the registry as the estimated just compensation for the lands taken. The necessity for flexibility in the language of the paragraph of the act wherein the power of the court respecting distribution is defined will be obvious to any one who recalls the almost infinite variety of estates, interests, shares, liens, and encumbrances under, and subject to, which lands may be held and the frequent uncertainty in which the actual ownership of property is involved. This court considers those factors especially in its appraisal of the liberality which the court is allowed in directing distribution. And they have been given due recognition by other courts. United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 129 F.2d 577, 579. There, after

quoting the paragraph of the act touching distribution, the court said: "The sentence last quoted obviously refers to what is 'just and equitable' as between the lienors and lienees. The United States has no interest in how the fund is divided."

Touching the limits upon the court's discretion under the language involved, the Circuit Court of Appeals for the Fifth Circuit lately said in Re Keith, 128 F.2d 908, 912: "We think it plain that the statute, in providing that the district judge may order payment of the moneys deposited in connection with the declaration of taking, intended to confer upon him a discretion to be justly exercised in favor of avoiding by expedition rather than imposing by delay in distribution undue hardships upon persons dispossessed of their lands, and that we have the power to compel distribution if the district judge arbitrarily and without reason refused to do so."

While it can not be affirmed that Section 258a contains any explicit mandate for the payment to an admitted owner of condemned land of the entire estimated and deposited just compensation for his property prior to the final ascertainment and award of the actual just compensation for it, nevertheless, some considerations issuing from the general scheme of its newly provided procedure do support that course. Among those may be mentioned, first, the immediate vesting in the United States of title to the real estate upon the filing of the petition and the declaration of taking and the making of the deposit, with the right of the court to make orders requiring occupants immediately to surrender the physical possession of the property; secondly, the absolution of the government from any liability for interest upon the deposited money, though interest must be adjudged against the government for the amount of the final award to the extent that it is not so deposited; thirdly, the emphasis by the act upon the obligation of the government to supply any deficiency in the final award, not covered by the deposit, coupled with its utter silence upon the situation that may arise in the event of a final award in an amount smaller than the deposit; and finally, the whole pattern of the act which contemplates a possible award in favor of the defendant beyond, but not below, the government's estimate of just compensation. Those considerations have been emphasized by the courts that have thus far discussed the present problem.

The issue directly presented here has been resolved in several cases favorably to the contention of the moving respondents. United States v. Certain Lands, D.C., 39 F.Supp. 91; United States v. 266.25 Acres of Land, D.C., 43 F.Supp. 633; Miller v. United States, 9 Cir., 125 F.2d 75; In re Keith, supra.

In United States v. Certain Lands, D.C., 39 F.Supp. 91, the court (see pages 93 to 98, inclusive) adverted to the discussion of the measure, which later became section 258a, upon the floor of the House of Representatives on December 5, 1930, approximately eleven weeks before its final enactment. From that discussion it is manifest that members of the House Committee on Judiciary considered that the right to the immediate reception of the deposited money was vested by the act in the owner of the condemned land. (Vide, the following excerpt from the record quoted on page 98 of 39 F.Supp.: "Mr. Chindblom. * * * Under that language, no doubt, the owner could go in immediately and receive from the court the money which had been deposited for his use. Mr. Graham. That was the idea. Mr. Chindblom. That is the purpose of the committee, is it not? Mr. Graham. Yes. Mr. Jenkins. Would that prevent the owner from going ahead with the prosecution of his rights? Mr. Graham. Not at all.") The writer of this memorandum is disinclined to seek too confidently for the construction of legislative language in the reports of legislative debates. Their unreliability is notorious. And the courts should find the legislative will in formal legislative enactment rather than in irresponsible and inconclusive legislative argument. Yet occasionally the debates do clarify uncertainties, and this appears to be an example of such clarification.

Reasoning further to its conclusion, the court in the case last cited said: "The premises are free and clear of all mortgages, leases or other encumbrances, except real estate taxes due the City of New York. There is therefore no reason to wait until the return day of the petition in condemnation for the payment of the deposit. Many months may elapse before the proceedings are terminated. If the Government's position is correct the owner of the property in the meantime can be deprived of its

property or the deposit. This was not the intention of the Congress." And so, though the issues in the case were not made up, the court held that the owner was entitled to receive immediately the full amount of money deposited in respect of its land.

In United States v. 266.25 Acres of Land, supra, the District Court for the Eastern District of South Carolina reached a similar conclusion. It introduced into its reasoning the added argument that by the tendering of the estimated just compensation for the property, the government "would seem" to be "estopped from claiming that the property is worth less than that stated in its Declaration." [43 F. Supp. 635] Whether that position is necessarily correct may not be immediately in issue under the present motion. Yet, it seems not to be wholly foreign to this inquiry. If the United States may hereafter insist upon a valuation lower than that which it has tendered upon the institution of this case, then the court, in the exercise of its discretion in the direction of distribution, may well consider · how it should protect the government in the contingency of a lower ultimate valuation. And the most obvious device would be the retention of such portion of the deposited fund as might be estimated to be adequate under all circumstances, to cover the possible overpayment. The entry against a defendant of a personal judgment for his excessive withdrawal would seem to be a futile effort in many cases. But the manifest weight of judicial opinion appears to sustain the view that under section 258a, the deposited estimate constitutes an offered price below which the government may not expect to acquire the title to the condemned land.

Miller v. United States, supra, supports the reasoning of the foregoing citations. In that case the circuit court among other things reversed the ruling of the district court, which, upon a jury's verdict finding damages to three landowners in amounts less than the deposits in respect of their lands, had awarded judgment in favor of the government in each instance for the amount by which the deposit was excessive. The principal opinion in the case rejected the trial court's ruling as beyond its jurisdiction but did not sustain that conclusion by any discussion. However, an opinion by one of the judges, concurring in that branch only of the majority opinion, sup-

ported his position by a reference to Los Angeles, etc., Ry. Co. v. Rumpp, 104 Cal. 20, 37 P. 859, 861.

The Rumpp case is instructive. It was decided in 1894 under a California condemnation statute, comparable in principle with, though more explicit in detail than, 40 U.S.C.A. § 258a. The California act allowed the plaintiff after trial and determination of damages to take over the possession and use of the property on payment into court of the full amount of the judgment and any further sum which the court might require as a fund for payment of any further damages and costs which might be adjudged against the plaintiff, and further allowed the defendant in whose favor the judgment had been rendered to receive the same upon order of the court "upon his filing a receipt therefor, and an abandonment of all defenses to the action or proceeding, except as to the amount of damages he may be entitled to in the event that a new trial shall be granted. A payment to a defendant as aforesaid shall be held to be an abandonment by such defendant of all defenses interposed by him, excepting his claim for greater compensation." After the amount of a judgment on an original trial had been paid into court and possession had been taken, by the plaintiff, the defendant complied with the statute and received the amount of the judgment, but on an appeal obtained a new trial which resulted in a smaller verdict; whereupon the trial court entered judgment for the plaintiff and against the defendant for the return of the excessive payment, which the Supreme Court of California in effect reversed. In reasoning to its conclusion the California court drew a distinction between its statute and one upon the same subject in New York which expressly provided that upon appeal by a defendant, the defendant, in the event of a smaller recovery on retrial, must return the excessive payment theretofore received by him. Concluding its discussion the California court said: "We do not see that our conclusion does any injustice to the plaintiff. By the payment, without any effort to have a reassessment of damages, it assented that the amount assessed was the just compensation required by the constitution, and cannot therefore complain; *and the court having paid it to the defendant, in obedience to the statute, we do not see how it can again assume control over it, or direct to what purpose the de-*

*fendant shall apply it, in the absence of a statute authorizing it, the proceeding being purely statutory."* (Emphasis added.) So, the jurisdictional deficiency announced without discussion in the majority opinion in Miller v. United States, supra, is explained.

Mt. Shasta Power Corporation v. Dennis, 66 Cal.App. 186, 225 P. 877, rehearing denied by Supreme Court, may be examined with interest for its reaffirmance of the general rule announced in the Rumpp case. An interesting and confirmatory analysis of a somewhat comparable statute of New Jersey is found in Mayor, etc., of Jersey City v. Hamilton, 70 N.J.L. 48, 56 A. 670. The opinion in that case is especially instructive upon the significance of the omission from the statute under consideration of any language affirmatively according to the condemning authority the right after its payment of the estimated just compensation and the resultant acquisition of the title and possession to seek the advantage of a lower judicial valuation, and the want of power in the court by construction, to relieve the government from the burden cast upon it by any legislative omission.

In re Keith, supra, from which quotation has already been made, is likewise instructive upon at least some considerations which should not be allowed to impel the district court to postpone payment of the entire deposit. It also emphasizes the landowner's right to prompt payment. Recalling that it arose as an effort in the Circuit Court of Appeals to compel by mandamus the distribution which the district court has deferred, interest lies in the following language of the opinion: "In view of the terms of the act, and of its generally understood purpose that persons whose property is condemned should, while the condemnation proceedings are going forward, be as near as may be protected from undue hardship from the taking, it would seem that in the exercise of a sound discretion some plan could have been earlier worked out by which the amounts in question here could have been paid to those entitled to receive them. We are convinced that some arrangements could and should have been made to bring the matters more speedily to a conclusion in this and in other cases of money so deposited, particularly are we of the opinion that the deposited moneys may not be withheld and their payment delayed as a part of any plan or program to induce or bring about final settlement of the condemnation proceedings. We cannot therefore, accept as valid reasons for the more than one year's delay in paying over the money, the contentions of the government's attorneys that the docket of the court is congested, that there are many cases to be tried, and that the rights of persons whose property has been taken must wait upon the convenience of the government's attorneys in making settlements."

United States v. Certain Parcels of Land in Prince George's County, Maryland, D.C., 40 F.Supp. 436, though not directly in point upon the issue now tendered, may be examined with profit for its orderly discussion of the relations between the parties in cases of this character and the procedure generally to be followed in the procuring of distribution.

No judicial opinion or legal literature has been drawn to the court's attention in support of the petitioner's petition. Nor has the court's own study disclosed any direct authority sustaining it.

The Court has carefully considered Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, in which judgment on a verdict on final trial to a jury for an amount substantially lower than the government's estimate and deposit was sustained, and reversal was denied notwithstanding the trial court's refusal to allow the landowner to introduce in evidence as a "judicial admission by the [plaintiff]" the declaration of taking containing a statement of the estimated just compensation. But this court is of the opinion that the issue involved in the Ramming case was one of trial technique rather than of substantive right and that the circuit court's ruling so far as it touches the matter now under consideration is expressly limited to the procedural issues before that court. If the opinion in the Ramming case had considered the substantive issue now under examination it would have been persuasive, perhaps controlling, here. But such consideration is not reflected in the reported opinion.

Nor has the court overlooked the recently reported opinion of the District Court for the Southern District of New York in United States v. 3.08 Acres of Land in North River, 46 F.Supp. 64, 65, in which, upon the authority of Ramming Real Estate Company v. United States, supra, it was suggested that, "if the Federal au-

thority overestimates the value of the property and too much money is deposited with the clerk, it would seem that only title to so much of it as represents just compensation passes immediately to the former property owners". But that discussion was manifestly not judicial decision but mere dictum in the circumstances of the case, and was really interposed, arguendo, in the course of an analysis which conceded the possibility that the thought of the trial court in United States v. 266.25 Acres of Land, supra, may ultimately prevail as the settled law.

This court, therefore, has come to the conclusion that the position assumed by the moving respondents upon the general issue of their present right to immediate distribution of the reserved portion of the deposit is well taken, and should ultimately be sustained.

As a practical measure, however, the present motion, made in general terms and jointly by the owners of twenty-eight separate tracts of land, will be denied and overruled; but with the reservation to the owners of the several tracts involved of the right separately to move for the withdrawal and payment to them of the amounts to which they may severally be entitled with due analysis in each motion of the situation respecting title, encumbrances (inclusive of mortgages, judgments, taxes, easements and the like), the applicable estimate and deposit, the previous withdrawals therefrom, the amount remaining undistributed, the alleged proper distribution thereof, and such other facts and circumstances as may be material. Thereupon and after due notice to counsel for the petitioner an explicit and detailed order will be entered upon each motion, which may be relied upon by the clerk as a basis for distribution out of the available funds in the registry of the court.

Upon the moving respondents' demand for the immediate appointment of appraisers, the court is convinced that a negative ruling must be made. Giving due and sympathetic consideration to In re Keith, supra, it does not appear that the admitted delay by the petitioner in seeking appointment of appraisers for all of the land involved in the action is unjustified. True, many months have elapsed since the suit was filed, and since appraisers might first heretofore have been designated.

But the whole file and the obviously accurate factual statements made by the government's counsel on oral argument must be regarded. This is the first major proceeding of its nature in this district. It has involved for counsel certain novelties whose solution has required time. The urgencies of the military establishment have occasioned changes in the personnel of counsel. The practical operation of the ordnance plant has disclosed the necessity of several enlargements and alterations of the territory subject to condemnation.

In this situation the court can discern, on the part of the government, neither negligence nor purposeful delay. Besides, counsel for the government have stated convincingly that in the relatively immediate future they will be prepared to ask the court for the designation of appraisers with authority to value the lands taken in the entire area. That will be the orderly course to pursue.

The court, therefore, will deny and overrule the motion's second branch.

An order in accordance herewith has been prepared by the court which is being filed along with this memorandum.