## UNITED STATES v. HOBLITZELL et al.

District Court, W. D. Virginia, at Lynchburg.
May 25, 1932.

See, also, 2 F. Supp. 870.

Harrison, Long & Williams, of Lynchburg, Va., for Hoblitzell.

McDOWELL, District Judge.

In re Fund from Tract No. 550.

This is a proceeding, instituted by the United States in this court, to expropriate forested watershed lands lying in this judicial district. When the several funds representing the compensation for the lands taken were paid into court, an order was made fixing a future date for the filing of claims to the funds, a copy of which was sent by mail to all of the more than 300 defendants, whose names and addresses were shown in the record. In respect to one of the several funds, conflicting claims were filed in behalf of one Hoblitzell, represented by counsel; and by the members of a family by the name of Smiley, who were not represented by counsel.

When the time for filing claims had expired, an order was made fixing a time and place for a trial of these conflicting claims, a copy of which was sent to each of the claimants.

On the last-mentioned date none of the Smiley claimants appeared in person or by attorney, no oral evidence was offered by them, and none of them filed, or offered to file, any documentary evidence of title. Hoblitzell did appear by his attorney.

On examination of the claims it appeared that Hoblitzell claimed the entire fund, and that the Smileys claimed one-fourth of it. The conflict was therefore confined to a fourth of the fund.

The controlling statutes are: Section 2 of the Act of August 1st, 1888, c. 728, 25 Stats. 357 (40 USCA § 258), which may be described as the Federal Condemnation Conformity Act; and section 4374, Virginia Code 1919 and 1930. This state statute reads as follows:

"*Inquiries of Commissioner; Order of Publication; Disposition of Money, etc.*— After the payment of the amount of compensation and damages into court as hereinbefore prescribed, the interest or estate of the owner or owners which has been condemned, as aforesaid, shall terminate, and they shall have such interest or estate in the compensation or damages paid into court as they had in the property so taken or damaged, and all liens by a deed of trust, judgment, or otherwise upon said property or estate shall be transferred to such money so paid into court, and the court shall make such distribution of such money as to it may seem right, having due regard to the interest of all persons therein, whether such interest be vested, contingent or otherwise, and to enable the court to make a proper distribution of such money it may, in its discretion, direct inquiries to be taken by a commissioner of the court or by a special commissioner in order to ascertain what persons are entitled to such money, and in what proportions, and may direct what notice shall be given of the making of such inquiries by such commissioner or special commissioner. (1902–3–4, p. 957, § 14; 1906, p. 452.)"

The attorney for Hoblitzell first took the position that, because no appearance had been made by or for the Smileys, Hoblitzell should be regarded as the sole claimant, and should be awarded the entire fund without evidence that he had had title to the land. I overruled this contention, and Hoblitzell's attorney then introduced some title papers, and

proposed to rely on the government abstract of title to prove that his client's title originally emanated from the commonwealth.

In respect to three-fourths of the fund Hoblitzell is the sole claimant.

And here arises a question of interest. There are in this case no infant or insane defendants. Hence we have here no question as to any possible duty resting on the court in respect to such defendants.

In respect to other possible owners there seems a sufficient reason to ignore them, and to award the fund to the sole claimant without requiring even prima facie proof of title.

The institution and pendency of a government expropriation suit is given great publicity. Publication is made in a local newspaper, notices are posted at the front door of the courthouse of the county in which the land lies, and also of the building where the federal court is held. The gathering of the condemnation commissioners, attorneys, and witnesses on the land is usually an event of local interest and of much notoriety. And, as has been said, a copy of a court order requiring claims to the fund to be filed is sent to each of the parties in interest whose names and addresses are known. With so much notoriety, it seems a reasonable conclusion from the fact that only a single claim has been sent in that the sole claimant is entitled to the fund.

I. The Failure of the Smiley Claimants to Appear at the Trial.

The petition to condemn does not allege that there is an infant or an insane person among the defendants who are or may be interested in tract No. 550. The following discussion therefore relates only to a case in which, not only all of the claimants, but all of the parties defendant, are assumed to be adult and sane.

The funds arising in the great majority of the forestry cases are usually quite small, and the majority of the claimants are both poor and ignorant. The result is that it is rare that a claimant employs counsel, and it is unusual if the claimant can state the nature of his claim, or can describe accurately the land referred to in his claim. The result is that, if the court is to do justice, claims must be liberally construed. The Smiley claims must therefore be read as asserting at least a right to such part of the fund from tract No. 550 as should go to some of the heirs of John P. Smiley. I must therefore, until further admissible evidence is put in, assume that John P. Smiley may at his

834

death have been the owner of a fourth of tract No. 550.

▇ Where two rival claimants to a fund derived from an expropriation of land have each filed a claim to the fund, neither can be regarded solely as a plaintiff or as a defendant. It is necessary to regard each claimant as both a plaintiff in respect to his own claim and a defendant in respect to his opponent's claim. The reason for so saying is as follows: Both claimants being under the duty of proving a right to the fund, it is possible that each of them has nothing to offer except color of title, and can show no title by possession. In any trial of conflicting claims it is necessary that some one of the claimants be called upon first to introduce his evidence. The court, knowing nothing of the title of either, must arbitrarily require one of the claimants to be the first to offer his evidence. In such a case, if rejection of the claim of one were held to leave the other the "sole claimant," who need not offer any evidence at all in order to get the fund, it is manifest that the claimant who is required to first present his evidence will necessarily lose all right to the fund. And this will be, not because his opponent has title, but because it chanced that the opponent was not called on first. Certainly such method of settling rival claims could not be a just one.

And hence in any condemnation case, where rival claims to a fund have been filed, each claimant is to be regarded as a plaintiff in respect to his own claim, and as a defendant in respect to the claim of his rival. It follows that in respect to Hoblitzell's claim he is plaintiff and that the Smileys are defendants who have by a pleading in effect traversed Hoblitzell's right to have the fund.

It may seem strained to say that a claim is a traverse of an opposing claim; and yet I believe such is, at least usually, its true nature. If A and B both claim the same fund, each in effect asserts his own right, and must intend thereby to deny the right of his opponent.

▇ Aside from the abstract of title, to be later considered, Hoblitzell has put in evidence no documents except the tax deed, the will of J. H. Lee, and the deed to Hoblitzell from the widow and children of J. H. Lee. He has offered no evidence of a possessory title, and in his claim he commences his paper title by a deed from individuals. He asserts in his claim that he has had possession; but he has offered no evidence in support of such claim. In so far as a possessory title is concerned, every document which Hoblit-

zell has offered is mere color of title. Aside from showing claim of title, color of title serves no purpose except to give bounds to a partial actual possession within the boundary described in the color of title; and to gain a possessory title the actual possession must have been not only under a claim of title, but also open, hostile, peaceable, and unbroken for the period of limitation, which is in this case 15 years.

▇ The situation in the case at bar at the time set for the trial was that the Smileys, having previously filed claims, did not appear, and Hoblitzell by attorney appeared and insisted that he was to be regarded as a sole claimant. So to have regarded Hoblitzell would have been to ignore the fact that the Smileys had filed claims, and to put them in the same position as that occupied by the numerous other defendants who had not filed claims. It would have been to treat the Smileys as in a position analogous to that of a sane and adult defendant in an ordinary action at law, who had been duly summoned, and who had filed no pleading and who did not appear in court at the time for trial.

But it seems to me that the case at bar, because of the fact that the Smileys had filed claims, is radically different from the case above instanced. Hence the position of the Smileys is analogous to that of a defendant at law, whose pleadings have raised an issue of fact, and who does not appear at the time and place for trial. If in such case the law does not permit a judgment for the plaintiff by default, but requires of him to introduce at least prima facie evidence of facts entitling him to judgment, I believe that the same rule should be applied here.

In 34 Corpus Juris, 160, § 371, it is said in part as follows: "Judgment by default may be entered upon defendant's failure to appear, after issue has been joined, when the case is called for trial. But in some jurisdictions defendant's mere failure, after issue has been joined, to attend when the case is called for trial is not by itself sufficient grounds for taking judgment by default."

Cases in support of the first rule are from seven states; those cited as supporting the second rule are from eleven states, including West Virginia. Neither list of citations includes Virginia.

In 14 Standard Proc. 855, 856, it is said: "In some jurisdictions no judgment by default can be rendered after issue joined even though defendant fails to appear at the call of the case."

---

The cases cited are from ten states, not including either Virginia or West Virginia. In the notes to the above text is the following: "It is error to enter a judgment by default after issue joined, although defendant does not answer to his name when called, but the plaintiff must proceed and try the cause in the ordinary manner. Wacker v. Young, 172 Ill. App. 255."

In 1 Black on Judgments (2d Ed.) § 86, it is said: "When an answer or other pleading of a defendant, raising an issue of law or facts, is properly on file in the case, no judgment by default can be entered against him; to authorize a default, the answer or other pleading must be disposed of by motion, demurrer, or in some other manner."

See, also, in relation to actions of ejectment, 19 Corpus Juris, 1190, § 271, and Doll v. Feller, 16 Cal. 432; Bario v. Blumner, 1 N. M. 552. At present I have not access to either of these cases.

I have not read the majority of the cases cited in the above texts; but from the entire absence of citations in point in such works on Eminent Domain as are accessible, it seems a reasonable conclusion that none of the above-mentioned cases relates to a dispute as to the ownership of a fund paid into court in expropriation proceedings.

I have not found any Virginia case in point. The case of Anonymous, by Chancellor Taylor (cited in 6 W. Va. 20) in 4 Hen. & M. (14 Va.) 476, and cited with tacit approval in Terry v. Fontaine's Adm'r, 83 Va. 451, 458, 2 S. E. 743, relates to cases in which the defendant has filed no pleading.

I fully realize that the (conflicting) cases cited in 34 Corpus Juris, 160, and the cases cited in 14 Standard Proc. 855, 856, and in 1 Black, Judgments, § 86, are at best merely somewhat analogous to the case at bar.

It is also true that I am sailing on an uncharted sea. My only guide, except analogies, is section 4374, Code Va. 1930: " * * * The court shall make such distribution of such money as to it may seem right, having due regard to the interest of all persons therein, whether * * * vested, contingent or otherwise. * * * "

I have never been able to find any cases which construe the foregoing provision, in respect to procedure.

In the absence of any well-settled rule in Virginia, I believe that I should in the case at bar follow the rule applied in the greater number of jurisdictions.

Moreover, the majority rule seems to me better calculated to arrive at a just result in this case than the minority rule. In these forestry cases, as between rivals who have filed claims, the fund should go to the one who had title to the expropriated land. Color of title without possession is no evidence of title. A mere allegation of possession in a pleading, which has been in effect traversed, is also no evidence of title, and to award the fund to Hoblitzell, without proof of long-continued, hostile, peaceable, and notorious possession, would be to ignore the opposing claims and to treat mere color of title as all-sufficient evidence of title and of ownership of land.

Further, when any claimant pursuant to order setting a date and place for the trial of conflicting claims comes to court, he should come prepared at the least to prove a prima facie right to the fund. Hence there is no peculiar inconvenience and no unreasonable hardship in adopting the majority rule.

III. Using Government Abstracts of Title.

I have never fully examined the duty of the court in cases of this character in respect to infant and insane defendants. It is possible that in cases where there are such defendants even an agreement of all of the claimants that the abstract of title be used as evidence could not be availed of. In this case there are no infant or insane defendants, and, if the only claimants had agreed that the abstract should be treated as evidence, there might be no objections to so using it. In the claim (No. 2) of four of the John P. Smiley heirs, there is nothing that could possibly be regarded as a consent to the use of the abstract as evidence. In the claim of Hannah and Sarah Smiley, and in the claim of James Smiley, there are requests that the court look to the "examination of title," to ascertain the proper share or interest of these claimants. But I do not see that I can properly regard such fact as a consent that Hoblitzell may also use the abstracts as evidence of his alleged right to the fund. I do not know that any of the Smileys knew that Hoblitzell had filed a claim, nor do I know that they would now consent that both sides may rely on the abstracts. Hence I must consider Hoblitzell's right to use the abstract as in the absence of consent by the opposing claimants.

The government abstracts of title are made by the title attorney for the use of the Special Assistant Attorney General, to be herein referred to as government counsel, whose duty it is to determine if a satisfactory title to land desired for a national forest (see Weeks Act, 36 Stats. 961) can be had

by purchase; and, if not, that he may have an accurate description of the land, and that he may also know what persons should be made parties defendant to a condemnation proceeding. The abstracts are not public documents. They are not intended for public use. After a condemnation suit has been so far finished that a fund is paid into court, which I have to distribute, I can, and frequently do, by consent of government counsel, borrow them for the use of counsel, and especially for the use of guardians ad litem in forestry cases. It saves much labor and expense if counsel and guardians ad litem may thus get a trace of title and learn of the defects in title shown by the abstract. But the abstracts were not intended for such purpose, and they do not fall within the doctrine of the admissibility of public documents.

The contents of the abstract may be briefly summarized as follows: (1) The Title Attorney's "Opinion of Title"; (2) abstracts of patents, deeds, mortgages, contracts, and wills; (3) condensed statements concerning suits in equity and at law, which usually include the title attorney's conclusions of law concerning the effect of such proceedings; (4) a large amount of hearsay gathered from any available source concerning many important facts relating to claims to the land; (5) lists of the persons whom it would in the opinion of the title attorney be prudent to make parties defendant in a condemnation suit; (6) conclusions as to possession; (7) judgment liens and tax liens.

Before going further, it should be said that, giving the utmost effect that can under the rules of evidence be given to official acts, or to official statements, the result is only an exception to the hearsay rule. The best evidence rule remains in force.

(1) In regard to an opinion of title, I know of no rule of evidence which makes a document, even if it be regarded as an official report, admissible evidence. It is not a report of facts, but of conclusions of law. To admit an opinion of title as evidence at the instance of one claimant over the objection of the other, or without the consent of the other, would be an unheard of departure from the rules of evidence. Courts do admit opinion evidence as to foreign law; but not as to domestic law.

(2) In regard to abstracts of deeds, etc., the best evidence rule alone affords a sufficient reason for saying that an abstract is not admissible. Again, it frequently happens that the title attorney's only purpose in making an abstract of a deed for instance is to show that it is prudent and in the interest of the government to make the grantee, or his successors in title, parties defendant in the condemnation suit. The deed may be good, or invalid on its face, or of doubtful validity. And yet the abstracter would perform his whole duty without setting out the recitals and other facts shown on the face of the deed, which would make a complete copy of the deed of the utmost importance in a contest over the fund.

(3) Quite as inadmissible are also the statements of the title attorney which attempt to summarize the facts as to equity suits and lawsuits, and his conclusions of law in respect thereto. In deciding contests as to the funds in these condemnation cases, the court must form its own conclusions of law; and should have before it copies, not extracts from, such documents as are necessary for the purpose.

(4) The information as to facts in pais gathered by the title attorney is frequently inaccurate; but for his purposes inaccurate information is useful, and he has no reason to seek the truth. To illustrate: If some single resident of the neighborhood were to tell the title attorney that some former owner of the land, who died intestate, had left two children, John and Mary, it would be the duty of the title attorney to put down the unknown successors in title of both John and Mary as proper parties defendant; and this even if other people in the vicinity should tell the attorney that Mary died unmarried and without issue during the life of her father. Again, if the title attorney should hear that one John Smith had at one time occupied the land under a claim of title adverse to that of the owner under the paper title, it would be his duty to report the fact, and it would not be his duty to seek to ascertain how long John Smith occupied the land, or the nature of his possession. In other words, the title attorney in many cases has no duty to learn all of the facts. It is not for him to pass judgment on many facts which may be of vital importance in a contest over the ownership of a fund resulting from the expropriation of land. Neither the title attorney, nor the government counsel, have any interest other than to get before the court as defendants everybody and anybody who has, or may have, a vestige of a claim to the land which the government desires to acquire.

(5) This list of names presents no question for discussion in this case.

(6) What has been said is sufficient as to the title attorney's conclusions, if any, as to

title by possession. Such must necessarily be conclusions both of fact and of law.

(7) The report of judgment liens and tax liens calls for no discussion at present.

It follows that Hoblitzell has no right to rely on the abstract as evidence in support of his claim.

The result is that neither side has proved a right to the disputed fourth of the fund. This part of the fund must be retained on deposit, at 3 per cent. interest, until one or the other of the rivals asks for a further hearing.