## UNITED STATES v. CERTAIN PARCELS OF LAND IN PRINCE GEORGE'S COUNTY, MD., et al.

### Civ. A. No. 1236.

District Court, D. Maryland.

Aug. 18, 1941.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., and Robert R. McLeod, Atty., Land Div., of Washington, D.C., for the Government.

Charles C. Marbury, of Washington, D. C., Samuel J. Fisher, of Baltimore, Md., Adrian P. Fisher, of Upper Marlboro, Md., James J. McGrath, Jr., of Baltimore, Md., and T. Hammond Welsh, Jr., of Hyattsville, Md., for various property owners.

CHESNUT, District Judge.

The present requirements of National Defense have very greatly increased the number of condemnation suits in which the federal government is taking property for public use. This is particularly true in Baltimore City and in the Maryland counties adjacent to Washington. It is necessary that the property be very promptly taken and equipped for public use. To this end the government now generally resorts to the special procedure provided by 40 U. S.C.A. § 258a, whereby, without awaiting formal condemnation of the land by a jury of inquisition in judicial proceedings, a special declaration of taking is filed in the case at its inception "by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States." The declaration must state "the sum of money estimated by said acquiring authority to be just compensation for the land taken". When this sum is deposited in court "to the use of the persons entitled thereto", it is followed by an ex parte judgment vesting the property in the United States, "and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein". It is further provided by the statute that "upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. * * * The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable".

The court is also authorized to determine ex parte the time within which and the terms upon which the parties in possession shall be required to surrender possession to the government. In view of the national necessities this time is usually made a very short one; and in many cases, of which this is one, the parties in possession are put to inconvenience in so quickly vacating their previous property, and where homes are thus taken, as in this case, there is often particular embarrassment in at once acquiring substituted homes, especially if the compensation to be awarded for the taking is not immediately available. And, as the government pays the money into the court for the use of the persons entitled thereto, the former owners in many cases do not clearly understand why the money so deposited for what they consider their use and benefit is not immediately available upon their mere ex parte request for payment. This situation, illustrated by the present case as only one of a number recently pending, requires some consideration of the proper procedure for the distribution of moneys deposited by the government in such cases, especially as the statute does not itself outline the procedure to be followed but leaves the matter to the proper legal procedure of the courts. The particular question which arises has regard to the measure of duty and the proper procedure to be followed by the court in determining who are the parties entitled to the deposited fund. To some extent this and similar questions were discussed by District Judge McDowell in the Western District of Virginia in the case of United States v. Hoblitzell, D.C., 2 F.Supp. 832, in a somewhat analogous case.

With respect to the applicable procedure, it must first be noted that this case, as well as most similar condemnation cases, has been filed in this court under the authority of section 257 of Title 40, U.S.C.A.; and by section 258 it is provided that the procedure shall conform as near as may be to the state procedure in like causes. The new rules of federal civil procedure are not applicable to condemnation cases, except on appeal. See rule 81, 28 U.S.C.A. following section 723c. The applicable Maryland state procedure is to be found in Art. 33A of Flack's Annotated Code of Maryland 1939, §§ 1 to 18. The substance of the procedure is that the case is begun by the filing of a petition by the condemnor, in which the property is sufficiently described for identification, and the known or reputed owners are named and unknown interests, if any, are so described. When the petition is filed the court directs summons to issue for the defendants to be returned in not less than ten nor more than twenty days; and where there are unknown or nonresident or unsummoned defendants "the Court may order the sheriff to set up a copy of the summons for such defendants upon the property, and a notice to be published once a week for three successive weeks, in a newspaper published in the County where such property is situated [or in Baltimore City] requiring such defendant to appear in the said Court on or before a certain day to be named in the order, said day to be not less than thirty days nor more than forty days from the date of the first publication of said order, and to show cause why said property, or such defendant's interest therein, should not be condemned as prayed in the petition". Section 2. When the case is at issue, after appropriate notice, either actual or constructive, and is ready for trial, a jury is impaneled in the court and sent to view the property; and thereafter testimony is presented in court and the jury by its written inquisition finds that the property is properly subject to condemnation, if that is the result of the trial, and fixes the proper compensation to the property owners. In practice in this court the jury in its inquisition also names the particular persons who are entitled to be paid and the amounts respectively to which they are entitled. This constitutes in effect a judgment in favor of the parties named, and thereafter upon their application the sums awarded them respectively are paid to them either directly by the condemnor in satisfaction of the judgment, or paid out of the registry of the court after the moneys have been deposited by the condemnor.

In the instant case the petition for condemnation was filed by the government on July 2, 1941. It described 19 separate parcels of land with separate ownerships for each, at Suitland in Prince George's County, Maryland, a few miles from the District of Columbia line. The property is desired by the government for the construction of a large office building. As to each parcel the petition named certain owners or possessors or reputed owners of the property, but also as to *all* likewise stated that there might be unknown interests against whom publication would be

necessary. Pending further examination of title to the respective parcels, the government did not immediately, in its order presented to the court, provide for publication, but an order was signed for summons in the usual way to all of the known and named resident property owners, and the marshal was directed to post notices on the property. Contemporaneously with filing the petition the government also filed a declaration of taking on which the usual ex parte judgment was entered vesting title in the United States and requiring the delivery of possession in a very few days unless cause to the contrary should be shown. No such cause has been shown by any of the defendants, and the government has taken possession of the property. Answers have been filed by the owners or reputed owners of most if not all of the 19 parcels consenting to the condemnation of the property, and agreeing to the acceptance by the respective alleged owners of certain specified sums as full compensation for the properties taken respectively, out of which, however, must be paid any liens, taxes or other charges as specified in the statute. The amount paid into the registry of the court was $425,189.

No further formal action was taken by the government or any of the parties to the case until about ten days ago Mr. McLeod, a lawyer of the Department of Justice having the matter in charge, conferred with the court as to possible expeditious procedure in paying from the registry of the court the just compensation to which the parties are found to be respectively entitled. When the court called the attention of counsel to the averments of the petition as to unknown defendants and the lack of publication to constructively notify them, an amendment to the petition was filed in which the government has now withdrawn the averment as to unknown possible owners of all of the separate parcels save two. Thereupon the court passed an order, on the motion of Mr. Flynn, United States Attorney for this district, in which the clerk was instructed to notify all parties to the case whose addresses were known that the court would hear, on August 15, 1941, applications for the distribution of the moneys to those entitled thereto upon proper legal proof of interest.

In considering what is the proper procedure to determine who are the persons entitled to the fund in court, the following questions occur: (1) *When*, that is, at what stage of the proceedings, can an order for the payment properly be made; (2) what persons must be before the court in consequence of due notice, either by personal summons or constructive notice by publication; (3) what is the nature and extent of proof which should be required by the court to establish the interests of those persons requesting payment from the fund; (4) if the evidence as to title shows that the property taken was subject to "certain liens, rents, taxes or assessments" should an order for payment of the excess value over and above the liens or charges be made without prior notice to those persons to whom such charges are payable, and an opportunity to them respectively to show the amounts due; (5) if the whole fund is paid out and it subsequently develops that other parties were entitled to some portion thereof, what are the rights of such parties? These questions are not completely answered either by the terms of section 258a of Title 40, U.S.C.A., nor by judicial decisions applying the statute. For the proper procedure resort must be had to general principles of law.

The Fifth Amendment to the Federal Constitution provides that no person shall be deprived of property without due process of law; nor shall private property be taken for public use without just compensation. The absolute fundamentals of due process are jurisdiction, adequate notice, and a fair hearing. In re Condemnation Suits by United States, D.C., 234 F. 443; Clarksburg-Columbus Short Route Bridge Co. v. Woodring, 67 App.D.C. 44, 89 F.2d 788, 790; Johnson & Wimsatt, Inc. v. Hazen et al., 69 App.D.C. 151, 99 F.2d 384; Baltimore Belt R.R. v. Baltzell, 75 Md. 94, 23 A. 74; 20 C.J., Eminent Domain, § 343 et seq.; Tiffany on Real Property, § 2163. What constitutes due process in any given situation may also depend upon the particular procedural provisions of applicable statutes. In the instant case the procedure is controlled by the Maryland statutes, except to the extent that they are modified by section 258a of Title 40, U.S.C.A. The validity of that statute is not here questioned, nor is it at all doubtful because it is a well-established principle of the law of eminent domain that private property may be taken for public use by governmental authority when adequate provision is made for the reasonably prompt payment of the compensation due. United States v. McIntosh, D.C.Va., 2 F.

Supp. 244, 252; United States v. Eighty Acres, D.C., 26 F.Supp. 315; Hessel v. Smith & Co., D.C., 15 F.Supp. 953. Under section 258a the estimate of just compensation determined by the taking authority and deposited in court is not conclusive on the property owners as to the full measure of just compensation which, when the estimate is deemed inadequate, is to be determined, as in the present case as to some of the parcels, by a jury after full hearing, and a judgment for a greater valuation, if any, than the sum deposited is to be entered in favor of the persons entitled.

■ The answers to some of these questions will also be necessarily importantly affected by the contents of the government's petition for condemnation in the particular case, especially with respect to the averments as to ownership, because it is these averments which directly control the subsequent procedure as to notice; and the matter may also be affected by the position taken by the persons named in the petition in their answers to the case. Thus if the petition for condemnation for any particular parcel of land states that there is a single person who is the absolute owner in fee subject to no liens or charges, and thereafter the named owner answers the case, consents to the taking, agrees to the amount deposited as just compensation and asks for the payment thereof from the registry of the court, the case is a simple one which presents no difficulties in procedure; and there seems no obstacle to ordering the payment of the amount deposited to the person so named forthwith upon the application of the party in interest. United States v. Certain Lands, D.C., 39 F.Supp. 91. The situation is, however, far different when the petition for condemnation states that there are a number of different persons entitled to or claiming ownership or interests in different amounts, and there are liens or charges of uncertain amounts on the land, and there are also unknown or nonresident owners or claimants who may be entitled to some interest. In that situation it seems quite obvious that no payment can be ordered properly by the court until all the resident named defendants whose addresses are known shall have been personally summoned, and nonresident and unknown persons shall be constructively notified by publication in accordance with the applicable procedure under the state statute. This was the actual situation in the present proceeding until the very recent amendment of the petition by the government eliminating the averment as to unknown owners of the majority of the parcels involved. It is clear enough, therefore, that until this amendment was made, no publication having been made in the case, the court was not justified in ordering payment to any one in the case. Now that the amendment has been made and unknown claimants eliminated, the procedure is thereby to some extent simplified with respect to most of the separate parcels involved. It is further simplified by the answers and petitions filed by the owners named in the petition for condemnation, as to most of the parcels, in which they respectively accept the amounts deposited as just compensation and request that it be paid to them less deductions for specified liens and charges, the amounts of the latter being also established by other clear papers or evidence in the case. On August 11, 1941 the government filed a motion "for the entry of judgment based on the petition, the answers and the stipulations filed herein determining that the just compensation payable to the petitioners for parcels Nos. 1, 2, 3, 6, 7, 9, 10, 11, 12, 13, 14, 17 and 19 shall be the amounts deposited into the registry of this court as estimated just compensation for the said parcels, and determining that the just compensation payable for the taking of parcel No. 8 shall be the sum of $23,000 inclusive of interest". Thereupon the court ordered the clerk to notify all parties to the case whose addresses were known that a hearing would be held on August 15, 1941 with respect to applications for distribution of portions of the funds deposited in court. This hearing has now been held.

■ With respect to the first question, as to the time when orders for payment may properly be made, it may be said generally that this depends upon the nature and circumstances of the particular case; but no payment should be ordered until all the persons named in the proceedings as having a possible interest in the fund have been duly notified, and their answers filed or defaults taken against them, and after this necessary judicial procedure the court may then, with all parties in interest before it, properly proceed to adjudicate the distribution of the fund. But no distribution should be ordered unless and until all persons made defendants by the petition,

or shown by testimony in the case to be interested in the fund, have been duly notified and are actually or constructively present before the court.

 With respect to the nature and quantum of evidence sufficient to establish ownership in the land and interest in the fund, the sufficiency of this is to be determined by customary judicial standards. See Stevens v. Edwards, 5 Cir., 112 F.2d 534. The sufficiency of proof in any case will necessarily depend upon the nature of the title claimed, whether a record title or title by adverse possession or otherwise. All parties having knowledge of the facts and otherwise competent witnesses can testify in accordance with applicable rules of evidence. Title examiners as experts in their particular field can also testify as to the state of the record title. But, unless agreed to by the parties before the court, it seems not permissible, at least over objection, to accept as sufficient evidence mere abstracts or certificates of title not supported by expert testimony, or affidavits in lieu of personal testimony of witnesses in court. See United States v. Hoblitzell, supra.

 With respect to the ascertainment of and provision for the satisfaction of liens and charges, it will have been noted that section 258a provides as follows: "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

It is also to be noted that the effect of the taking by the authorized authority is to vest both title and possession in the government and therefore presumably to transfer all claims both of ownership and lienors, whether legal or equitable, to the fund, at least so far as such liens and charges may exist in favor of persons named or otherwise bound by the proceeding. So far as liens and taxes and assessments are concerned, the amounts ordinarily appear of record and will be developed in the evidence as to title and ownership. The matter of rent is, however, somewhat different and seems ordinarily to require the court to consider the just and equitable claims of any tenant of the property who is dispossessed by the taking. This implies that the tenant should have an opportunity to be heard by the court with respect to his or its claim for compensation out of the fund. The status of taxes as liens on real or personal property is of course to be determined by the laws of the particular state. After the property is taken by the government it is exempt from state taxation, and this gives rise to the question as to whether, when the taking is within a current tax period, there should be an equitable adjustment of the whole tax bill as of the time of surrender of possession of the property to the government. United States v. Certain Lands, D.C., 29 F.Supp. 92.

 The question as to the rights of parties properly entitled to the fund but not actually compensated therefrom is, of course, not directly presented in this case, but the law applicable thereto is directly related to the other questions above considered, and especially relates to the measure of care that should be taken by the court in ordering the distribution of the fund. When the government deposits the estimated just compensation in the registry of the court, and takes the property, it has, subject to possible exceptions hereafter discussed, discharged its obligation, and is not directly concerned with the distribution of the fund. The duty to make proper distribution is thereby imposed upon the court, in accordance with well-established principles of the judicial function. United States v. Dunnington, 146 U.S. 338, 350, 13 S.Ct. 79, 36 L.Ed. 996; Rambo v. United States, 5 Cir., 117 F.2d 792; City of St. Paul v. Certain Lands, 8 Cir., 48 F.2d 805. If the court makes a mistake in awarding the fund to one of several adverse claimants who are before the court, the remedy is of course by appeal, and the defeated party would have no claim against the government. On the other hand, the court is not an administrative agency, has no proper function of investigation on its own initiative as to who are the real owners of land taken for public use, and can deal only with the facts as disclosed in the pleadings and testimony in the case.

As has been already stated, the court should not make distribution until all the parties have received due notice and are given an opportunity to be heard. So much delay seems inevitable even though it may cause inconvenience to those ultimately shown to be entitled to the fund. The duty of the court under the statute is to award the fund to those shown to be entitled thereto. Who the parties are that are entitled cannot be determined by the

court until after notice and hearing. It is not the function or duty of the court to make independent investigation as to the title or ownership outside of the case as presented to the court by the pleadings and testimony. If therefore the government's petition for condemnation by error or mistake, inadvertent or otherwise, omits from the record before the court persons really entitled to interests in the land, and such unnamed interests are not disclosed in the testimony in the case, there obviously can be no just criticism of the court for awarding the fund to the persons named by the government as the reputed owners and apparently shown to be such by the testimony.

It is equally true that unnamed and unknown owners cannot be constitutionally deprived of their property without just compensation and without adequate notice. It seems logically to follow that interests of unnamed and unknown parties are not concluded by the proceedings, and they must be entitled to just compensation in some way, even though the government has taken title and possession to the land and the fund has been fully distributed by the court. It must also be borne in mind that section 258a is merely a modification of the established Maryland procedure and not an entire substitute therefor. The general principle of due process is that no person is bound by court proceedings and judgment therein who has not been actually or constructively notified of the proceeding. It therefore seems reasonably clear that, despite the provisions of section 258a, the judgment of the court awarding title and possession to the government *is not binding upon persons not named in the proceeding.* This is clearly the effect of the ordinary condemnation proceeding in Maryland, and doubtless in all other States where there prevails the constitutional principle of due process with respect to property. In the ordinary condemnation case in Maryland the State Constitution, art. 3, § 40A, provides that private property may not be taken for public use without just compensation being first paid or tendered to the party entitled thereto, except that where the property is condemned by Baltimore City or the State of Maryland provision may be made by law for the appraisal of the property prior to the condemnation and the payment of the estimated value into court, and the securing of the payment of any further sum that may be awarded by a jury, in which case the property may

be taken before final judgment in the condemnation case. The qualification is, of course, very similar to the effect of section 258a where the government condemns property, but entirely apart from that, it is not doubted that the federal statute supersedes the substantive law of the state, where the land is taken for federal public use.

Even if it should be determined that the effect of section 258a is to completely divest the title and interest of *all* persons in and to the land taken, and to unconditionally transfer all claims to the fund, it seems necessary to take the view, on constitutional principles, that the persons really entitled, but not compensated from the fund, will have a right to obtain just compensation by suit against the United States under the Tucker Act, 28 U.S.C. A. § 41(20); Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1; Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; United States v. North American Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935, unless the claimant is barred by limitations, Watson v. United States, D.C., 34 F.Supp. 777; Stubbs v. United States, D.C., 21 F. Supp. 1007.

In the instant case a subordinate question is presented as to whether the claimants to the fund should be represented by counsel of their own selection. Ordinarily it is certainly desirable that this should be done. It is not reasonably to be expected of the court that it should on its own initiative undertake to disburse the fund without formal application from the parties in interest. It is true that parties to the case have the right to present their respective cases in person without counsel, but where questions of title to land are involved it is almost inevitable that claimants to the fund must have professional assistance in order to properly present their cases, and the court should fairly be entitled to the assistance of counsel learned in the law of local real estate and applicable legal procedure. In the instant case it appears that representatives of the government bargained with the owners of the several parcels for a considerable period of time prior to the institution of the condemnation suit, and obtained in most cases definite written agreements from the reputed owners as to the amount of just compensation to be paid,

a figure being named in nearly all cases which would be the gross sum to be awarded for the land taken, with the necessary result that all incidental expenses will have to be borne by the property owners. It has resulted, perhaps naturally enough, that the owners have been reluctant to incur the expense of employing counsel. In some cases there are mortgages on the respective parcels on which there is accumulating interest from day to day, and this has caused in the particular case even unusual pressure for a very prompt distribution of the fund. Counsel for the government have recognized these conditions, and have expressed their willingness to actively cooperate with the property owners in maturing the procedure in the case and acting measurably in their interest in presenting the respective claims for consideration by the court. It is of course well known that in practically all condemnation cases the office of the Attorney General of the United States makes a preliminary careful examination of the title to the property to be condemned in order to enable the United States Attorney to properly prepare the petition for condemnation and conduct the proceedings therein, see 40 U. S.C.A. §§ 255, 256, 257. In the present case counsel for the government have, as above stated, formally moved the court to enter immediate judgment on the pleadings in favor of the respective claimants of most of the several parcels. The effect of this is to substantially make the judgments so entered consent judgments. The court has been glad to have the assistance from government counsel, who are naturally desirous to have the fund distributed to those properly entitled thereto and thus obviate any possible further claim on the government. Nevertheless the court has felt it very desirable if not actually necessary to have the pleadings and the admissions thereunder supplemented by affirmative evidence in support thereof.

In accordance with these principles, the court has in this case entered judgment in favor of the respective claimants where the required legal procedure has been matured and the evidence supports the respective claims; and orders will be signed directing the clerk to make distribution of the fund accordingly to that extent. The claims of other alleged owners will necessarily have to await further proper procedure in the case.