UNITED STATES of America,
Plaintiff,

v.

758.72 ACRES OF LAND, more or less, IN BOONE AND CARROLL COUNTIES, ARKANSAS; and Tuck Stacy, et al., and Unknown Owners, Defendants.

No. 428.

United States District Court
W. D. Arkansas,
Harrison Division.

Sept. 4, 1959.

Chas. W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

J. E. Simpson, Berryville, Ark., for defendants.

Ted Coxsey, Berryville, Ark., for Booker Cox.

JOHN E. MILLER, Chief Judge.

The ultimate question for determination is whether the plaintiff, United States of America, is entitled to a summary judgment pursuant to Rule 56, F.R. Civ.P., 28 U.S.C.A.

The record reflects the following facts:

On April 21, 1958, the plaintiff filed its complaint and declaration of taking for the condemnation of 758.72 acres of land, more or less, in Boone and Carroll Counties, Arkansas. Upon motion of the plaintiff, the court on the following day entered an order requiring all persons owning or in possession of the tracts of land sought to be condemned to deliver to plaintiff within five days the possession of the tracts described in the complaint and declaration of taking.

Among other tracts condemned, the plaintiff acquired the fee simple title in the following:

Tract No. O–1505–1, 161.88 acres,
Tract No. O–1505–2, 58.88 acres,

and a perpetual right, power, privilege and easement occasionally to overflow, flood and submerge the following tracts:

Tract No. O–1505E–1, 1.5 acres,
Tract No. O–1505E–2, 8.0 acres,
Tract No. O–1505E–3, .5 acre.

The land was owned by Nay Hightower and wife, Emma Hightower.

At the time of the filing of the complaint and the declaration of taking, the plaintiff deposited in the registry of the court the sum of $14,600 as estimated just compensation for the estate taken in the above tracts.

On July 26, 1958, the owners filed their answer, in which they alleged that they were the owners in fee simple of a farm consisting of 697.94 acres; that the reasonable fair market value of the farm prior to the taking by the plaintiff of the tracts hereinbefore mentioned was $80,-000; that after the taking of the said tracts, the remaining portion of the farm would have a value not in excess of $9,-000; and that they should be awarded $71,000 as just compensation.

The case was tried to a jury on October 30 and 31, 1958, and on the latter date the jury, after viewing the land, returned a verdict fixing just compensation for the taking of the fee simple title of Tracts Nos. O–1505–1 and O–1505–2, and the imposition of an easement on the three remaining tracts at $15,925. Precedent for judgment on the verdict was not furnished the court until January 9, 1959, on which date judgment was entered in accordance with the verdict.

On January 30, 1959, the United States Attorney presented to the court a precedent for order of disbursement, which order was filed and entered on the same date.

Inter alia, the order of disbursement provided:

"That after examination of the title evidence covering the above numbered tracts it has been determined that Nay Hightower and Emma Hightower, his wife, were, on the date of taking by the United States of America, the rightful owners of said tracts of land, subject to any outstanding interests of third parties;

"That disbursement should now be made to the parties entitled thereto for the taking of said Tracts Nos. O–1505–1, O–1505–2, O–1505E–1, O–1505E–2, and O–1505E–3 by the United States of America.

"It Is Therefore Ordered, Adjudged and Decreed by the Court

that disbursement of the money on deposit in the registry for the taking of Tracts Nos. O–1505–1, O–1505–2, O–1505E–1, O–1505E–2, and O–1505E–3 be made to the parties entitled thereto, and the Clerk of the Court be, and he is hereby, authorized and directed to issue a registry draft payable as follows for delivery to the office of the United States Attorney for forwarding to the payees named thereon, to-wit:

"Nay Hightower and Emma Hightower, his wife, and J. E. Simpson ...............$15,943.95

"It Is Further Ordered that the Judgment granted Nay Hightower and Emma Hightower against the United States of America, upon the issuance of the said registry draft, be and hereby is satisfied in full.

"Jurisdiction of this cause is retained for the entry of further orders and decrees."

Draft was issued on the same date for the sum of $15,943.95, payable to Nay Hightower and Emma Hightower, his wife, and their attorney, J. E. Simpson.

On May 1, 1959, the plaintiff filed its motion to set aside judgment and order of disbursement, in which it alleged:

"2. It now appears that the tracts herein involved were subject to a mortgage in favor of the First National Bank of Green Forest, Arkansas, in the principal sum of $15,-000.00 and a second mortgage to the United States of America acting through the Farmers Home Administration which mortgage was filed for record on March 5, 1954, appearing at Book 44, Page 518, and secures principal indebtedness at the present time of $14,287.25 plus interest. The holders of these mortgages because of mistake and inadvertence were not named parties defendant to the proceedings herein.

"3. It is the information of the plaintiff and it, therefore, alleges that after payment of reasonable attorney fees, the defendants, Nay Hightower and Emma Hightower, made disposition of the amount of the award by paying First National Bank of Green Forest the sum of $7,760.00 and Booker Cox who was a witness for the defendants, Nay Hightower and Emma Hightower, at the trial of the issue of just compensation, the sum of $7,760.00 on an unsecured debt.

"4. Although the First National Bank of Green Forest, Arkansas, was not formally a party, an officer of the said bank, Gus Bryant, appeared as a witness in favor of the landowner and the president of the said bank, Mr. J. R. Anderson, testified in a companion case that was consolidated with it and was present at all times.

"5. It is the belief of the plaintiff and it therefore alleges as fact that the defendants, Nay Hightower and Emma Hightower, along with the officers of the First National Bank of Green Forest and Booker Cox, conspired to defeat the lien of the second mortgage of the Farmers Home Administration and to elevate the unsecured debt of Booker Cox to a position above the second mortgage of the Farmers Home Administration.

"6. The plaintiff further alleges that an equitable lien attached to the amount disbursed as just compensation and that Booker Cox and the defendants, Nay Hightower and Emma Hightower were unjustly enriched to the extent that the award was not applied to the discharge of these liens after deduction for reasonable attorney fees.

"Wherefore, plaintiff prays that summons be issued herein against Booker Cox and the First National Bank of Green Forest, Arkansas, that moneys received by Nay High-

tower, Emma Hightower, and Booker Cox from the award be impressed with a trust in favor of the lien holders and that the Court order said parties to repay said amount in court for disbursement subject to the proper liens and for all other relief to which it might be entitled."

Upon the filing of the motion, summons was issued thereon for the First National Bank of Green Forest and Booker Cox, to which were attached copy of the motion and certain interrogatories. Interrogatories also were served upon Mr. and Mrs. Hightower. In due time the Bank, Booker Cox, and Mr. and Mrs. Hightower filed their separate responses to the motion and answered the interrogatories propounded by the plaintiff.

The draft recited that it was issued "under order of this date, in disbursement as to Tracts O–1505–1, O–1505–2, O–1505E–1, O–1505E–2 and O–1505E–3, in Harrison Division, Civil Action No. 428, U. S. v. 758.72 acres, etc.," and was mailed by the United States Attorney to Mr. J. E. Simpson of Berryville, Arkansas, the attorney for Mr. and Mrs. Hightower. Upon receiving the draft, Mr. Simpson mailed the same to Mr. Hightower. Upon receipt of the draft, Mr. Hightower and his wife, Emma Hightower, endorsed it, and then Mr. Hightower took the draft to Berryville and he, together with his attorney, Mr. Simpson, proceeded to the Bank where the draft was presented for payment. At the time the draft was presented, the President of the Bank, Mr. J. R. Anderson, and the respondent, Mr. Booker Cox, were present. The proceeds of the draft were distributed at that time as follows:

J. E. Simpson, Attorney ......$ 381.32
First National Bank of
   Green Forest ............... 7,781.32
Booker Cox ............... 7,781.31

The amount paid Mr. Simpson was the balance due on his fee for representing Mr. and Mrs. Hightower. The amount received by the First National Bank of Green Forest was applied upon the indebtedness due it by Mr. and Mrs. Hightower and secured by a first mortgage upon the land that had been condemned. The amount received by Mr. Cox was applied on an indebtedness due from Mr. and Mrs. Hightower to him, which indebtedness was secured by a chattel mortgage upon 126 Hereford cows.

Mr. Hightower, in response to one of the interrogatories propounded to him by the plaintiff, in discussing the disposition of the draft and its proceeds said:

> "* * * I presented it to the First National Bank, Green Forest, Arkansas, in the presence of Mr. Anderson, Mr. Cox and Mr. Simpson, and I directed Mr. Anderson, President of the bank, to pay Mr. Simpson his Attorney fee, which he and I had agreed previously was $381.32, and to divide the remainder equally between the bank and Mr. Cox, which was done. The bank gave me credit on my note and mortgage for $7,781.31, and Mr. Cox received $7,781.32, and marked the balance due on my note paid, which was in excess of the amount he received."

Thus, all of the just compensation paid to Mr. and Mrs. Hightower was applied on their indebtedness.

The mortgage of the Bank was dated October 31, 1953, and recorded in both Boone and Carroll Counties, Arkansas, since the land covered by the mortgage was partly located in each of the counties.

The United States of America, acting through the Farmers Home Administration, held a mortgage on the land executed by Mr. and Mrs. Hightower to secure the sum of $14,287.25, with interest, which mortgage was duly recorded on March 5, 1954. It was subsequent to the mortgage held by the Bank.

It should be noted that in the motion to set aside the judgment and order of disbursement the plaintiff alleged that the tracts condemned were subject to the mortgages of the bank and of the United States, acting through the Farmers Home Administration, and that "the holders of these mortgages because of mistake and inadvertence were not named parties defendant to the proceedings herein."

Following the filing of the answers by the Bank, Mr. Cox, and Mr. and Mrs. Hightower to the interrogatories submitted by plaintiff, the plaintiff on July 10, 1959, filed its motion for summary judgment, hereinbefore referred to. The pleadings and the answers to the various interrogatories show "that there is no genuine issue as to any material fact" insofar as the proceedings in court are concerned or how and to whom the award of just compensation was distributed.

The parties have submitted written briefs in support of their various contentions, which briefs have been considered along with the entire record.

This controversy arose because of the failure of the plaintiff to make the mortgagees, the Bank and the Farmers Home Administration, parties defendant.

The amount found to be just compensation was duly deposited in the registry of the court. It then became the duty of the court to adjudicate and distribute to each party having an interest in the land the proportionate amount of such just compensation found to be due him.

In United States v. 2979.72 Acres of Land, More or Less, In Halifax County, Va., 4 Cir., 1956, 235 F.2d 327, 329, the court, in quoting from Meadows v. United States, 4 Cir., 144 F.2d 751, 752, said:

" 'The taking was not of the rights of designated persons in the property but of the property itself. " * * * an unqualified taking in fee by eminent domain takes all interests and as it takes the res is not called upon to specify the interests that happen to exist." Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216. The value of the property once being determined in a proper proceeding, the sum so determined stands in the place of the property and can be distributed upon the adjudication of the value of the respective interests. United States v. Dunnington, 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed. 996; Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463.' "

Rule 71A(c) (2), F.R.Civ.P., provides in part:

" * * * Upon the commencement of the action, the plaintiff need join as defendants only the persons having or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, the plaintiff shall add as defendants all persons having or claiming an interest in that property whose names can be ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interests to be acquired, and also those whose names have otherwise been learned."

In the notes of the Advisory Committee on the above provision of the rule, 28 U.S.C.A., the Committee said:

"To carry out the purpose of such statutes and to aid the condemnor in instituting the action even where title is not acquired at the outset, the plaintiff is initially required to join as defendants only the persons having or claiming an interest in the property whose names are then known. This in no way prejudices the property owner, who must eventually be joined as a defendant, served with process, and allowed to answer before there can be any hear-

ing involving the compensation to be paid for his piece of property. The rule requires the plaintiff to name all persons having or claiming an interest in the property of whom the plaintiff has learned and, more importantly, those appearing of record. By charging the plaintiff with the necessity to make 'a search of the records of the extent commonly made by competent searchers of title in the vicinity in light of the type and value of the property involved' both the plaintiff and property owner are protected."

In United States v. Adamant Co., 9 Cir., 1952, 197 F.2d 1, the court at page 4 of the opinion said:

"It is an elementary principle in the law of condemnation, whether exercised by the government of the United States or by state or public bodies, that all persons having any interest in the property be made parties defendant. Nichols On Eminent Domain, 3rd ed., 1950, Vol. 2, Secs. 5.1–5.3; 29 C.J.S. Eminent Domain § 236; United States v. Dunnington, 1892, 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed. 996; [State of] Minnesota v. United States, 1939, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; United States v. Sunset Cemetery Co., 7 Cir., 1942, 132 F.2d 163, 164; State of Nebraska v. United States, 8 Cir., 1947, 164 F.2d 866, 868; California Code of Civil Procedure, Secs. 387, 389, 1246.

"No matter how large the number of persons who claim interests, where their rights are derivative and the award is for the whole estate, proceedings may be had to apportion the award. In such proceedings, the condemnor has no interest. Having secured a decree which vests title in him subject to the payment of the compensation, he is not interested in the manner in which the money he has paid for the entire title is apportioned between various claimants. Nichols, Op.Cit., Loc.Cit., Sec. 5.3(4), p. 51."

In 3 Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, § 1519, page 554, where Rule 71A is discussed, it is said:

"All persons having any interest in the property should be made parties defendant in a condemnation action. Whether their interest be legal or equitable, they are entitled to be heard and, if their claims are sustained, to share in the proceeds. But since the proceeding is in rem, there are no indispensable parties; the failure to join a necessary party does not defeat the condemnor's title to the land, though the party will retain his right to compensation. The government may have to pay a double award, since the omitted party in the past has been allowed to sue in the Court of Claims for compensation after the condemnation is completed, though a commentator suggests that where the government has made a 'reasonably diligent search of the records' as required by Rule 71A(c)(2) in order to ascertain the owners of the property, an omitted party might be held to have been joined as an 'unknown owner,' as the rule permits, and even this right cut off."

Rule 71A(j), F.R.Civ.P., provides that where the plaintiff has deposited the amount of money required by law as a condition to the exercise of the power of eminent domain, that: "In such cases the court and attorneys shall expedite the proceedings for the distribution of the money so deposited and for the ascertainment and payment of just compensation."

The farm from which the tracts were carved consisted of 679.94 acres. The fee title to 220.76 acres was acquired, and a perpetual easement was acquired in 10 acres. Thus, a total of 230.76 acres was carved from the entire farm,

leaving the landowner an acreage of 449.18.

The court assumes that the mortgage of the Bank and of the Farmers Home Administration covered the entire tract of 679.94 acres. The Bank received $7,781.32, which it applied on its debt. Booker Cox, who held no mortgage on any part of the land, received $7,781.31. These payments were made by Mr. Hightower from the money received when the draft was paid.

The prayer of the motion of plaintiff is "that moneys received by Nay Hightower, Emma Hightower, and Booker Cox from the award be impressed with a trust in favor of the lien holders, and that the court order said parties to repay said amount in court for disbursement subject to the proper liens and for all other relief to which it might be entitled."

It is apparent that the Bank was entitled to receive such a portion of the award as might be required to satisfy its debt since, admittedly, its mortgage was superior to the lien of the Farmers Home Administration and also superior to the rights of the owners. The record does not disclose how much was due the Bank on its debt, nor does the testimony show why the Bank permitted the mortgagors to pay Booker Cox the amount of $7,781.31 from the award if the amount received by the Bank did not pay its debt and satisfy the mortgage lien. Certainly, had the court been advised of the interest of the Bank and of the Farmers Home Administration in the land, a proper award would have been made to the parties according to their legal interest in the property taken. The court entered the order of distribution as presented by the United States Attorney, who at that time evidently did not know of the existence of the mortgage liens.

█ It is true, as stated by the court in United States v. Adamant Co., supra, that the condemnor, plaintiff, is not ordinarily interested in the distribution of the award. The chief interest of the condemnor is to procure all interests in the land. In the instant case the lien holders were not made parties and, as a result, one of the lien holders, the Farmers Home Administration, received no part of the award. The Farmers Home Administration was probably not entitled to any part of the award prior to the payment of the debt due the Bank. Likewise, Cox was probably not entitled to any part of the award as against the Farmers Home Administration since, admittedly, Cox had no lien upon the land taken by the plaintiff.

The motion of plaintiff filed on May 1, 1959, is designated "Motion to Set Aside Judgment and Order of Disbursement" pursuant to Rule 60(b), F.R.C.P., but an examination of the motion reveals that the plaintiff is not seeking to set aside the judgment ascertaining and awarding just compensation. It seems to desire that the judgment remain in full force and effect but is seeking a judgment against Booker Cox for the use and benefit of the Bank and the Farmers Home Administration. The rights and obligations of Booker Cox cannot be determined from the record before the court or the proceedings in the instant case, since he was not a party, and if the lien holders have been damaged by the distribution of the award, they may have a remedy against Booker Cox or even against the plaintiff for damages resulting from the failure of the plaintiff to make a reasonably diligent search of the public records to ascertain their interest in the land if it is determined that such search was not made.

In United States v. Certain Parcels of Land in Prince George's County, Md., D.C.Md.1941, 40 F.Supp. 436, at pages 443–444, the court said:

"The question as to the rights of parties properly entitled to the fund but not actually compensated therefrom is, of course, not directly presented in this case, but the law applicable thereto is directly related to

the other questions above considered, and especially relates to the measure of care that should be taken by the court in ordering the distribution of the fund. When the government deposits the estimated just compensation in the registry of the court, and takes the property, it has, subject to possible exceptions hereafter discussed, discharged its obligation, and is not directly concerned with the distribution of the fund. The duty to make proper distribution is thereby imposed upon the court, in accordance with well-established principles of the judicial function. United States v. Dunnington, 146 U.S. 338, 350, 13 S.Ct. 79, 36 L.Ed. 996; Rambo v. United States, 5 Cir., 117 F.2d 792; City of St. Paul v. Certain Lands, 8 Cir., 48 F.2d 805. If the court makes a mistake in awarding the fund to one of several adverse claimants who are before the court, the remedy is of course by appeal, and the defeated party would have no claim against the government. On the other hand, the court is not an administrative agency, has no proper function of investigation on its own initiative as to who are the real owners of land taken for public use, and can deal only with the facts as disclosed in the pleadings and testimony in the case.

"As has been already stated, the court should not make distribution until all the parties have received due notice and are given an opportunity to be heard. So much delay seems inevitable even though it may cause inconvenience to those ultimately shown to be entitled to the fund. The duty of the court under the statute is to award the fund to those shown to be entitled thereto. Who the parties are that are entitled cannot be determined by the court until after notice and hearing. It is not the function or duty of the court to make independent investigation as to the title or ownership outside of the case as presented to the court by the pleadings and testimony. If therefore the government's petition for condemnation by error or mistake, inadvertent or otherwise, omits from the record before the court persons really entitled to interests in the land, and such unnamed interests are not disclosed in the testimony in the case, there obviously can be no just criticism of the court for awarding the fund to the persons named by the government as the reputed owners and apparently shown to be such by the testimony.

"It is equally true that unnamed and unknown owners cannot be constitutionally deprived of their property without just compensation and without adequate notice. It seems logically to follow that interests of unnamed and unknown parties are not concluded by the proceedings, and they must be entitled to just compensation in some way, even though the government has taken title and possession to the land and the fund has been fully distributed by the court. * * *

"Even if it should be determined that the effect of section 258a [40 U.S.C.A. § 258a] is to completely divest the title and interest of *all* persons in and to the land taken, and to unconditionally transfer all claims to the fund, it seems necessary to take the view, on constitutional principles, that the persons really entitled, but not compensated from the fund, will have a right to obtain just compensation by suit against the United States under the Tucker Act, 28 U.S.C.A. § 41(20); Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1; Tempel v. United States, 248 U.S. 121,

39 S.Ct. 56, 63 L.Ed. 162; United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935, unless the claimant is barred by limitations, Watson v. United States, D.C., 34 F.Supp. 777; Stubbs v. United States, D.C., 21 F.Supp. 1007."

In Phillips v. United States, 7 Cir., 1945, 151 F.2d 645, at page 646, the court said:

"Concededly, as a general rule, one who has an interest in property about to be condemned and who is not made a party defendant is not affected by the proceeding and loses no rights thereby, but that rule is not applicable here, since the plaintiff did not have such possession of the lands as would give notice of any rights he might have had in the property, nor did the title record in the recorder's office reveal that plaintiff had any interest whatever in the lands in question."

■ The court does not believe that Rule 60(b) affords any relief to the plaintiff. The plaintiff, as above stated, is not seeking to set aside the judgment, but alleges that the Bank and Cox were not made parties "because of mistake and inadvertence." It can hardly be claimed that the failure to make the lien holders parties was the result of a mistake and inadvertence when the record shows that both mortgages were duly recorded, and even a perfunctory examination of the records would have disclosed the interest of the lien holders. See, Greenspahn v. Joseph E. Seagram & Sons, 2 Cir., 1951, 186 F.2d 616.

The plaintiff is not entitled to a summary judgment, and the motion therefor filed on July 10, 1959, and the motion to set aside judgment and order of disbursement filed herein on May 1, 1959, should be overruled. An order in accordance herewith overruling both motions is being entered today.